UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

JOHN REX RIGNEY,

    Debtor

_____/

Case No. 09-cv-14593

HONORABLE STEPHEN J. MURPHY, III

GENE R. KOHUT, Trustee,

    Appellant,

v.

JANICE RIGNEY,

    Appellee.

_____/

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

Before the Court is an appeal from the Bankruptcy Court in the matter of John Rex Rigney ("the Debtor"). Appellant Gene R. Kohut ("the Trustee") asks the Court to reverse the Bankruptcy Court's remand order setting aside default judgment against Appellee Janice Rigney[1] and the Bankruptcy Court's order granting summary judgment in favor of the same. For the following reasons, the Court concludes that the remand order is not properly before this Court. Moreover, the Court will affirm the Bankruptcy Court's order granting summary judgment in favor of Janice.

---

[1] Because both the Debtor and the Appellee have the surname Rigney, Janice Rigney will hereinafter be referred to solely as Janice.

**BACKGROUND**

The following facts were previously set forth by the Court. *See* Order Reversing Bankruptcy Court Order Setting Aside Default Judgment and Remanding for Reconsideration (docket no. 11) (hereinafter, "Order Reversing and Remanding").

On November 18, 1998, Janice obtained a judgment of divorce from the Debtor. The divorce judgment awarded Janice real property (the "Michigan property"), owned jointly by Janice and the Debtor, and granted the Debtor a $10,000 lien against the property. On the same day, the Debtor signed a quit claim deed conveying his interest in the property to Janice. On June 10, 1999, Janice paid the Debtor $10,366.20 in full satisfaction of his lein. Janice did not record the quit claim deed with the Oakland County Register of Deeds until January 5, 2007.

After the divorce judgment, Janice and the Debtor continued to reside jointly at the Michigan property, though the timing and manner of the cohabitation is disputed. On March 15, 2007, the Michigan property was sold to Baldwin Orion Holdings ("Baldwin") for $269,887.84. Both Janice and the Debtor signed the purchase agreement, though Janice retained all the proceeds from the sale. Subsequently, Janice executed a warranty deed transferring title of the Michigan property to Baldwin; the deed was recorded by the Register of Deeds on March 16, 2007. At the closing of the sale, both Janice and the Debtor signed an affidavit stating that they had owned the property continuously since 1985. Moreover, the Debtor signed a quit claim deed transferring any rights he had in the property to Baldwin. Janice and the Debtor continued to live at the Michigan property through closing of the sale in July 2007.

On June 30, 2007 – less than seven months after Janice recorded the quit claim deed

transferring the Debtor's interest in the Michigan property – the Debtor filed for voluntary Chapter 7 bankruptcy. Subsequently, the Trustee filed an adversary complaint against Janice seeking to avoid the recording of the quit claim deed as a preferential transfer pursuant to 11 U.S.C. § 547 or as a fraudulent conveyance under § 548. Moreover, the Trustee moved for declaratory judgment that Janice owed one-half of the proceeds from the sale of the Michigan property – $133,443.92 – to the Chapter 7 estate. After Janice failed to answer the complaint, a default judgment in the amount of $133,443.92 plus interest was entered against her. To satisfy the default judgment, the Trustee sought to foreclose on property Janice had purchased in Missouri ("the Missouri property"), using the proceeds from the sale of the Michigan property.

Subsequently, Janice moved to set aside the default judgment. The Bankruptcy Court granted Janice's motion, after finding that Janice had not received notice of the adversary proceeding against her, that her failure to answer the complaint was due to "excusable neglect," that she potentially had a meritorious defense against the complaint, and that a decision on the merits of the Trustee's claims was necessary because of the "extraordinary adverse consequences" to Janice on account of the default judgment. After considering the merits of the Trustee's claims, the Bankruptcy Court granted summary judgment in Janice's favor, holding that the recording of the quit claim deed was not a preferential transfer pursuant to § 547 because Janice was not a creditor of the Debtor.

In September 2010, the Court reversed the Bankruptcy Court's order setting aside the default judgment, and remanded the case to the Bankruptcy Court for further consideration of whether the default judgment could be set aside under Federal Rule of Civil Procedure Rule 60(b)(6), which provides that a judgment may be set aside "for any other reason that

3

justifies relief." Fed. R. Civ. P. 60(b)(6). The Court withheld judgment on the second issue on appeal – the Bankruptcy Court's order granting summary judgment – until the issues surrounding the default judgment had been resolved. On remand, the Bankruptcy Court again set aside the default judgment. Subsequently, the Trustee filed a motion to reopen the bankruptcy appeal, which the Court granted. The Trustee asserts that the Court should reverse: 1) the Bankruptcy Court's decision on remand to set aside the default judgment and 2) the Bankruptcy Court's order granting summary judgment in favor of Janice.

## LEGAL STANDARD

District courts have appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). A bankruptcy court's conclusions of law are reviewed de novo, while findings of fact are reviewed under the clear-error standard. *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 935-36 (6th Cir. 2010).

A. Default Judgment

The court reviews a bankruptcy court's decision to set aside default judgment for abuse of discretion. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995). "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." *Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir. 2002).

B. Summary Judgment

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is "material" for

4

purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F. 2d 649, 654 (6th Cir. 1993). "The judge is not to weigh the evidence and determine the truth of the matter, but rather [is to] determine whether there is a genuine issue for trial." *Sterling China Co. v. Glass, Molders, Pottery, Plastics and Allied Workers Local No. 24*, 357 F.3d 546, 551 (6th Cir. 2004).

**ANALYSIS**

A. <u>Default Judgment</u>

Janice asserts that the Bankruptcy Court's remand order setting aside the default judgment is not properly before the Court because the Trustee did not timely appeal the order. The Trustee argues that he was not required to appeal the remand order because the Court, in accordance with its previous order, must consider whether the issues surrounding the default judgment have been resolved before addressing the matter of summary judgment.

Federal Rule of Bankruptcy Procedure 8001 provides that "[a]n appeal from a judgment, order, or decree of a bankruptcy judge to a district court . . . shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002." Fed. R. Bankr. P. 8001(a). Bankruptcy Rule 8002, in turn, states that a notice of appeal must be filed

within 14 days from the date that a judgment, order, or decree was entered. Fed. R. Bankr. P. 8002. There is no question that the Trustee failed to comply with these requirements. He merely filed a notice of the Bankruptcy Court's remand order on March 3, 2011 – almost two months after the order was issued on January 5, 2011 – and then asserted in his motion to reopen appeal that the Bankruptcy Court's ruling was erroneous. And although the Court's previous order stated that it would not consider the matter of summary judgment until the issues surrounding default judgment were resolved, the Trustee failed to alert the Court at the time that the issue of default judgment had not been resolved by filing a notice of appeal.

The Trustee cites no authority for his contrary position, but even assuming the remand order is properly before the Court, the Court finds the Trustee's arguments in favor of reversing the decision to be unavailing. First, the Trustee contests the Bankruptcy Court's decision to set aside default judgment pursuant to Federal Rule of Civil Procedure Rule 60(b)(4).[2] The Trustee argues that Rule 60(b)(4) was beyond the scope of remand, and that the Bankruptcy Court's reliance on it overrules the Court's order. The Court disagrees with that analysis.

In its previous order, the Court, noting that there had been no mention of Rule 60(b)(4) in the Bankruptcy Court record, held that the default judgment could not be set aside under Rule 60(b)(4) because there had been no allegation (or finding) that service of process was improper or failed to comport with due process. Order Reversing and Remanding at 12. On remand, in accordance with the Court's holding that Rule 60(b)(6)

---

[2]Rule 60(b)(4) provides that a judgment may be set aside when it is void. Fed. R. Civ. P. 60(b)(4).

6

should only be used to set aside a default judgment "when there is 'something more' than the grounds set forth in [Rule 60(b)] provisions (1)-(5)," the Bankruptcy Court considered Rule 60(b)(4) for the first time. *Id.* at 15. Because the Bankruptcy Court record was devoid of any factual findings pertaining to Rule 60(b)(4), the Bankruptcy Court permitted supplemental briefing on the issue, and concluded that service of process was improper and failed to comply with due process. *See* Order Setting Aside Default Judgment at 9 (docket no. 12, ex. 1). This conclusion gives accord to the legal framework set out by the Court.

Second, the Trustee challenges the Bankruptcy Court's ruling that the default judgment should be set aside under Rule 60(b)(6). The Trustee argues that the Bankruptcy Court's holding ignores the Court's instructions and fails to properly address Rule 60(b)(6), instead discussing the second issue on appeal – avoidance pursuant to 11 U.S.C. § 547. This argument is unpersuasive. The Bankruptcy Court found that, assuming arguendo Rule 60(b)(4) was inapplicable, Janice was entitled to relief under Rule 60(b)(6) because the case presents an "unusual and extreme circumstance where principles of equity mandate relief and undue hardship will result if relief is not granted." Bankruptcy Court Opinion Setting Aside Default Judgment at 23 (citing *Olle v. Henry Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). The Bankruptcy Court based its conclusion on the fact that the Trustee sought to seize Janice's sole asset, the Missouri property, in which neither the Debtor nor the Trustee have a stake. *Id.* at 23. Moreover, the Bankruptcy Court noted that in the absence of the default judgment, the Trustee lacked a viable legal theory pursuant to 11 U.S.C. § 547 or 11 U.S.C. § 548 to obtain judgment against Janice. Although the Bankruptcy Court's holding relies on its conclusion that the Trustee cannot avoid the

7

preference under 11 U.S.C. § 547 or 11 U.S.C. § 548, the Bankruptcy Court's decision adhered to the mandates of the Court's order, which directed that Rule 60(b)(6) applies only in exceptional or extraordinary circumstances when there is something more than the grounds set forth in subsections (1) - (5). Order Reversing and Remanding at 15.

B. Summary Judgment

The Trustee asserts that Janice's recording of the quit claim deed is an avoidable preference pursuant to 11 U.S.C. § 547. For a transfer to be avoidable as a preference, the Trustee must demonstrate that "a transfer of an interest of the debtor in property" was:

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made--
      (A) on or within 90 days before the date of the filing of the petition; or
      (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

   (5) that enables such creditor to receive more than such creditor would receive if--
      (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
      (B) the transfer had not been made; and
      (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.].

11 U.S.C. § 547(b). "[T]he trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section[.]" § 547(g). A transfer is made "at the time such transfer is perfected." 11 U.S.C. § 547(e)(2)(B). For real property, perfection takes place "when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the

8

interest of the transferee."  *Id.* § 547(e)(1)(A).  Pursuant to Michigan law, perfection occurs when a conveyance of real property is "duly recorded."  Mich. Comp. Laws § 565.29.

### 1. Bankruptcy Court Decision

The Bankruptcy Court held that the recording of the quit claim deed was not a preferential transfer because Janice was not a creditor of the Debtor pursuant to § 547.  The Bankruptcy Court, relying on *Gold v. Interstate Fin. Corp. (In re Schmiel)*, 319 B.R. 520 (Bankr. E.D. Mich. 2005), stated that there were two transfers of the Michigan property: first, when the Debtor transferred his interest in the property to Janice pursuant to the divorce judgment and the quit claim deed in 1998 and second, when the first transfer was perfected by the recording of the deed in 2007.  Bankruptcy Order Granting Summary Judgment at 27.  Because the Bankruptcy Court found that the divorce judgment and quit claim deed transferred all of the Debtor's interest in the property to Janice, it concluded that Janice was not a creditor of the Debtor, and, therefore, the recording of the quit claim deed could not be avoided as a preferential transfer.  *Id.* at 29.  Moreover, the Bankruptcy Court noted that although Janice would have been a creditor if the Debtor had illegally encumbered the Michigan property in violation of the divorce judgment, "[t]he fact that [the Debtor's] creditors hypothetically could have encumbered his interest doesn't get the trustee an avoidable transfer."  *Id.* at 17.

### 2. Review

The Trustee asserts that the Bankruptcy Court erred when it determined that Janice was not a creditor under § 547.  According to the Trustee, Janice remained a creditor until she recorded the quit claim deed because, until that time, the Debtor or his creditors could

have encumbered the Michigan property. Accordingly, the Trustee argues that Janice did not receive what was owed to her pursuant to the divorce judgment until the transfer was perfected.

As a preliminary matter, the Court disagrees with the Bankruptcy Court that there were two transfers of the Michigan property for purposes of § 547. The Bankruptcy Code defines a transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with" property or an interest in property. 11 U.S.C. § 101(54). § 547(e) "supplements the Bankruptcy Code's general definition of transfer." *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 465 (6th Cir. 2008) (citing *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992)). Under § 547(e), a transfer of real property takes place when the transfer is perfected. *Id.* There is no dispute that the transfer of the Michigan property was not perfected until Janice recorded the deed on January 5, 2007. It is at that time that the transfer of the Michigan property occurred pursuant to § 547.[3]

Thus, the question to be decided is whether Janice was a creditor of the Debtor at the time the transfer occurred on January 5, 2007. The Bankruptcy Code defines a "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). There are two types of claims under the bankruptcy code. The first type of claim involves a "right to payment, whether

---

[3]The Bankruptcy Court's reliance on *In re Schmiel* is misplaced. *In re Schmiel* specifically deals with the issue of characterizing a refinancing transaction as two transfers for purposes of the earmarking doctrine. *See In re Schmiel*, 319 B.R. at 528; *see also Chase Manhattan Mortg. Corp.*, 503 F.3d at 468 (discussing circuit split over characterizing refinancing transactions as "a single unitary transaction or as a number of parts" when applying earmarking doctrine).

or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5)(A). The second is a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." *Id.* § 101(5)(B).

The Trustee cites *Barnhill*, 503 U.S. 393, in support of his position that Janice remained a creditor of the Debtor until she recorded the deed. In *Barnhill*, the Supreme Court held that the transfer of an ordinary check occurs on the date that the check is honored, not upon receipt of the check. *Id.* at 398-400. The Supreme Court reasoned that up until the time the bank honors the check, there has not been an unconditional transfer because a "myriad [of] events can intervene between delivery and presentment of the check that would result in the check being dishonored." *Id.* at 399.

The Trustee's reliance on *Barnhill* is misplaced. *Barnhill* dealt with the issue of when the transfer of an ordinary check occurs for purposes of § 547, not the issue of who is a creditor under the statue. The Court's holding that the transfer of the Michigan property occurred upon perfection, or in other words, when the Michigan property could no longer be encumbered by the Debtor or his creditors, comports with the reasoning in *Barnhill*.[4]

---

[4] Moreover, the finding is in line with *In re Cox*, 132 F.2d 881, 883 (7th Cir. 1943) (holding that transfer was perfected when it "became valid against a bonafide creditor") and 5 Collier on Bankruptcy P 547.06 (Alan N. Resnick & Henry J. Sommer eds., 16 ed.) (stating that "[a] transfer made for consideration antecedent to its execution is deemed to have been made only when perfected against bona fide purchasers . . . and if the elements of a voidable preference then exist, the trustee may set the transfer aside. A transfer made for a consideration contemporaneous with its execution, but perfected later, will similarly be judged as of the later date (when the consideration

When the transfer occurred, however, does not resolve the dispute of whether Janice was a creditor at the time of the transfer.

Moreover, although the Supreme Court held that there is not an unconditional transfer of interest in a check until the check is honored, the Supreme Court also stated that "[i]n the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill*, 503 U.S. at 398. Here, Michigan law makes clear that a divorce award of real property has the same effect as a quit claim deed. Mich. Comp. Laws § 552.401. A quit claim deed is "sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale." Mich. Comp. Laws § 565.3. Thus, when the divorce judgment awarded Janice the Michigan property, and the Debtor signed a quit claim deed, the Debtor effectively transferred all of his interest in the property to Janice. "Though the failure to record the deed did create an unnecessary cloud on title, it did not change the character of the transaction" between the parties. *Richards v. Richards*, 368 F. Supp. 2d 817, 819 n.2 (W.D. Mich. Mar. 28, 2005) (citing Mich. Comp. Laws § 565.29). Thus, the Debtor fulfilled his obligations pursuant to the divorce judgment to transfer his interest in the property to Janice, and, accordingly, Janice did not have either a right to payment or a right to equitable relief against the Debtor. 11 U.S.C. §§ 101(5)(A), 101(5)(B).[5]

The Trustee's reliance on *In re Elkind*, 11 B.R. 473 (Bankr. D. Colo. 1981), does not

---

became an antecedent debt), unless the delay in recording was not more than the time allowed by section 547(e) as a grace period."), on which the Trustee also relies.

[5] Even if the Debtor hypothetically could have encumbered the property, he had not done so, and, therefore, Janice did not have a claim against him "that arose at the time of or before the order for relief concerning the debtor." *Id.* § 101(10)(A).

12

persuade the Court to reach a different conclusion. In *In re Elkind*, a deed of trust was granted to the debtor's mother to secure a $27,000 loan made to the debtor in 1977. *Id.* at 474. The deed was not recorded until 1980. *Id.* The bankruptcy court held that the transfer occurred on the date the deed was recorded because until that time a bona fide purchaser could have interfered with the mother's interest in the property. *Id.* at 475 n.3. Moreover, the bankruptcy court held that at the time the deed was recorded in 1980, the mother was a creditor of the debtor. *Id.* at 475.

Again, the Court does not disagree with the Trustee's analysis that the transfer occurred at the recording of the quit claim deed. *In re Elkind*, however, is distinguishable on the dispositive issue of whether Janice was a creditor. In *In re Elkind*, the deed of trust secured a $27,000 loan granted to the debtor by his mother. Thus, there was no question that the debtor's mother was a creditor when the deed of trust was recorded. *Id.* In this case, the quit claim deed was not securing any loan, or claim, against the Debtor. Rather, as discussed *supra*, the divorce judgment and quit claim deed were effective to convey all the Debtor's interest in the property to Janice.

Because Janice did not have a claim against the Debtor, Janice was not a creditor. Thus, the recording of the quit claim deed was not a preferential transfer under 11 U.S.C. § 547.[6] Accordingly, the Court affirms the ruling of the Bankruptcy Court granting summary judgment in favor of Janice.

**WHEREFORE** it is hereby **ORDERED** that the order of the bankruptcy court granting summary judgment in favor of Appellee Janice Rigney is **AFFIRMED**.

---

[6]Because the Court concludes that Janice was not a creditor of the Debtor, it will not reach the parties' other arguments regarding the issue of avoidance.

**SO ORDERED.**

                        s/Stephen J. Murphy, III
                        STEPHEN J. MURPHY, III
                        United States District Judge

Dated: July 12, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 12, 2011, by electronic and/or ordinary mail.

                        s/Carol Cohron
                        Case Manager